Good afternoon everyone. Judge Cross and I are pleased to once again welcome Judge Molloy from the Eighth Circuit who is sitting with us today and did the same yesterday. So we welcome you to the panel once again. Thank you for having me here. Another docket of interesting cases. So with that we will call the first case United States of America v. Marcoccia. Mr. Yock. Yes. Thank you Judge. Joseph Yock. We appear for the appellant Marcoccia and we would like to reserve three minutes for rebuttal. That request will be granted. What we are talking about here judges is recidivism and as the U.S. Supreme Court made clear in Roman v. Estelle the case cited by my esteemed colleague Mr. Cross in the brief is somebody who imprisonment did not deter from committing new crimes after his release. This is a case where my client was caught in a trap essentially. He pled guilty to a state case where the sentence in Pennsylvania was eight months to 23 months and just before he finished the minimum eight months when he would have been eligible for parole had the parole authorities filed the proper paperwork. There was apparently a detainer filed by the federal government and the federal prosecutor files that detainer for one reason and one reason only because it violates the federal policy against redundant prosecution for the same events. Counsel we put out a letter to the parties reflecting that our observation in the record that there actually appears to be an intervening arrest. No there was no arrest. Can you go over the timeline with us because it does seem relevant to whether we are dealing with it. It goes right to that recidivism point you are raising. Oh sure yeah you can tell very. I would just like to ask something Mr. Yarkov. Yes. Pull up the appellant's brief here. I don't see you on the brief. What's your relationship with the firm that filed the brief? I'm sorry we co-counseled the law judge and I noticed that as well that my name wasn't on the brief. I'm very sorry about that. That was inadvertent. The brief was my colleague Mr. Agnellino. I looked and usually you have to find the name somewhere. I looked here and I didn't see your name at all. I'm very sorry. We weren't paying enough attention. You may proceed. Thank you. Yes it's very easy to see that if you look at the PSR that was presented to Judge Brand the defendant maxed out the entire 23 months on March 8th of 2006. And it was after he was sentenced on May 16th of 2007 at that time he had 14 months credit if you count it from March 8th of 2006 to May 16th of 2007 14 months credit. And then he was out from the federal imprisonment as of 12-16-08. That's another 19 months. 19 months and 14 months. I think you're missing the point that Judge Krause is asking about. It's a similar point that I thought of. You know the argument here whether this is a single or separate offenses. As I remember this case, the case which you're disputing should count once or twice. He was stopped in an automobile and he was charged by the state authorities for possession of methamphetamines. Was he not? He was charged with possession of methamphetamines with intent to deliver. And then the federal authorities subsequent thereto in an arrest that was made subsequent to that car stop brought an indictment against him for drug dealing for a larger span of time. Isn't that essentially what happened here? I believe it was a window of time that encompassed both the state case and the federal case. There was a window of time and the state case was somewhere in that window of time. That's not a bar on prosecution. The federal government has never under Pettit said that we can't prosecute just because the state authorities made an arrest during that intervening period of time. What has confused this case was the date of arrest was shown as the same date of arrest. If you go back to the pre-sentence report on the federal case, it shows the date of arrest to be the date the federal charges were filed, which was actually the correct date of arrest. The date of arrest shown in the PSR is 06-08-04. And he was arrested the first time on June 4th of 03. No, the PSR shows the same arrest date for the federal case as for those. Well, it does. But the original PSR on the federal case back in 04 shows a later date of arrest. Granted, but the PSR here that was filed for Judge Brand, that's a tacit indication that that's the same case. And I guess to un-confuse this, as I read the briefs of the federal government in this case, they have not argued that there's a different date of arrest. So if I were you, I would argue that they conceded it. Well, I think they have because our whole argument before Judge Brand was that there was a continuous period of incarceration with no intervening arrest that was never disputed by the government or by anybody else. Let's go back to Judge Krause's question, though. I think I know what you're talking about. I'm reading the pre-sentence report from 05. And he was paroled on the state charge, arrested on a separate drug charge, re-incarcerated, and served the 23 months. No, that's not true. He was never out from the time he was first arrested on the state charge until he was finished with his federal time. He was never out. That does not appear to be the case from the record here. He was sentenced on April 8th of 2004. The PSR indicates that he was released and was paroled from state custody August 31st of 2004. But it does appear that after being observed with meth manufacturing ingredients, he is arrested on new charges in November of 2004 and charged with manufacture, delivery, and possession with intent to distribute. Those charges are ultimately dismissed in favor of federal prosecution. So the federal indictment then, if that's the case, and why this seems so significant, is that then the federal indictment, the conspiracy charge, includes continuing criminal activity after his release from the 2003 arrest and involves a new arrest in November of 2004. Wait a second. The defendant was sentenced on April 8th of 2004 on the state charge to 8 to 23 months on the state charge. He was paroled August 31st of 2004, right? No. His maximum term of discharge is 3806 according to the PSR. In other words, that was the maximum term. He was paroled early. He was not out in the minimum term at 12804. I'm not sure that all this makes any difference. He was paroled early. But he may have had a federal detainer against him because of the federal investigation. Well, he definitely had a federal detainer against him because that's why his parole was revoked according to the PSR. Was there any indication of a federal arrest or any federal complaint or indictment that was brought against him before the indictment in 2005? No, it was just a detainer that was lodged with the state authorities and the state would then fail to parole him. A detainer based on what? There needs to be federal charges for there to be a detainer. There was no federal indictment or federal criminal complaint that appears in the record until 2005. Nor would that make sense since the conspiracy is charging until 2005. Well, I would suggest there probably was a federal charge. Mr. Rock, I think the more important point is, and what I'm trying to get you back to, is tell us why this text of the guidelines supports your position that these were not separate offenses for which your client could be designated a career offender. Well, the text of the guidelines may in fact make him a career offender. That's not the issue. The issue is whether or not you could ever have guidelines that would cover every possible scenario that you could come up with. You can't have any statute or guideline that would take care of every situation. That's why you need flexibility at the court level. Well, let's cut to the chase. The district judge recognized that in this case and he married. No, he didn't. He did too. He married. He married. That's true. For the very reason you just articulated. No, he didn't marry for that reason and I can prove that. Because he says, after he says a variance is justified, he then goes on to say, and I have done the research and about one third of people who are career offenders are married, get a variance, and that variance is typically in the last year 34.9%. And guess what kind of variance my client got? 36%. Now that's lumping him in with all of the career offenders that may in fact deserve some kind of variance. He was a career offender. Well, yes, but not because of recidivism. His time in jail, his time in incarceration was unbroken. Well, whatever it is because of, we're reviewing the sentence for reasonableness, both procedural and substantive. And how can you say that the district court in this case was procedurally unreasonable or substantively unreasonable? I believe it was substantively unreasonable because if he admits that there's a variance that is necessary, keep in mind this man pled guilty under the assumption that he was going to be somewhere in the neighborhood of 15 to 21 months. And all of a sudden we're up to 151 months. And you go back down to 95 months. And you go back down to 96 months. However, that's that 35% that he's giving him. It doesn't reflect that he doesn't deserve to be a career offender by rights or because of recidivism principles. Are you saying that, is it your argument that regardless of what the guidelines say, that he should have varied down to the original sentencing range? The original sentencing range to reflect that he was not authentically a recidivist. That's exactly my argument. Because you premise that on there not being an intervening arrest. Exactly, Judge. And if the court is confused by the PSR or is reading it differently from me, then I urge the court to send us back for a hearing to determine all of these facts definitively. Okay. We'll have you back on rebuttal, Mr. Yock. Thank you. Mr. Rochtaschel. May it please the court, George Rochtaschel on behalf of the United States. I don't believe in this case there is any real dispute with the way the district court applied the sentencing guideline in this case. The amicus came to the same conclusion the district court did. And we think the plain language under the non-precedential panel decisions of this court established that the district court was procedurally correct in calculating this defendant as a career offender in the case. Are we dealing with a circumstance where there was no, in fact, no intervening arrest? Or do we have an intervening arrest here? Can you help clear up in terms of the record that we have in front of us, if we think there was error, for example, by the district court, does it end up being harmless because we are dealing with a situation where there was an intervening arrest and there is recidivism in the sense that the federal charges actually deal with criminal activity after he was already sentenced and served time for the original state charge? Judge Krause, that's an argument I wish I would have made in our appellant's brief. And I think it does apply here as an alternative basis for affirming the district court. But in the first instance, the district court correctly found that there were two separate cases with two separate charging instruments sentenced on two separate dates. And although perhaps a more direct path might have been the intervening arrest, we think that that basis was sound. But looking at the record in the case, it does appear that this defendant was not arrested on the federal case until after he was indicted in August 2005. And that's really what we would have to look at in analyzing intervening arrests. Because there was an initial conviction in Bradford County for an isolated possession of methamphetamine in June of 2003. There was a sentencing. The defendant was released on parole. And then he was rearrested, revoked, and I think resentenced on the parole violation. There were also two other agricultural vandalism arrests between that initial arrest and the federal indictment that we believe practically count as intervening arrests as well. In fact, I think he was sentenced en masse in a consolidated fashion on all those Bradford County cases before the federal indictment took place. Let me ask you one question. There had been a request by counsel for a downward departure. There was a request for a downward departure. And the court, when it was going through its three steps, its three steps per bunter, per authority, indicated that there was no motion for a downward departure filed. Okay? Now, there was no objection made at that time on the record by counsel. But why wouldn't that mistake by the district court be procedural error? This is why we don't think it's procedural error, Judge Fischer. First of all, it appears as if, as a technical matter, the defense did make a motion for a downward departure but also argue in the alternative for a variance. And the district court indicated, and we think the record fully shows this, I think it's at page 87 of the appendix filed by the appellant in this case. The district court, we believe, was debating departure versus variance and consciously knew that a departure was available. But determined that it was more favorable, more advantageous for this defendant to proceed by way of a variance. I think the district court actually referred to guideline provisions under the career offender provision that talks about the ratcheting down. Ratcheting, I think, is a term of art this court has used where the district court would look at the next rung of the ladder on the criminal history categories and determine whether or not that was a reasonable place to sentence the defendant. When the district court, and I'm also responding to the court's recent question on December 2, where the court asked about the significance of what appeared to be the district court modeling the career offender guideline, when in fact what Judge Brand was doing was assessing whether or not a departure was more advantageous, achieved the sentencing goals the district court was looking to achieve as opposed to a variance. I think what the district court decided to do was proceed by way of a variance. I think you can infer from this record that the district court weighed a departure but determined that he could only go down to a level, a category 5 under the criminal history categories and decided that that range of 140 to 175 months, I think that's what the court said at the passage. It does indicate that he's going to proceed with a variance because it would only be a one level departure. But he then goes on, I think quite explicitly in the transcript, to say that he's now addressing the issue of disparity in sentencing under 3553A6. And that's where he makes the statement about, had Appellant not been designated a career offender, he would have had a criminal history category of 5 as opposed to 6 with an offense level of 29. That is also error, correct? Had he not been designated a career offender, it would not have been offense level 29, right? If the court had sentenced him under 2D1.1, clearly the 29 would have been different. But what we believe the record fairly discloses is that the district court in its sentencing grounds was talking about an alternative way of getting to a reduced sentence that ameliorated the effect of the career offender guideline. Well, he is discussing the extent of the variance and looking, as he's required to, to the issue of disparity among similarly situated offenders. And there seems to premise the extent of the variance on an erroneous fact, using the level 29 and not recognizing that the career offender guideline affected the offense level, not just criminal history category. If that's what happened here, then don't we need to remand? Wouldn't that be, on its face, procedural error and a pretty significant one? Well, in the first instance, we don't think it's necessarily procedural error. I alluded to the appendix at page 87, and that was the point where the district court was ruling on the objection to the application of the career offender guideline. And at page 87, it looks like it begins at line 4. The court talks about how the court agrees with Mr. Agnolino's general premise that the range calculated by the guideline is too high, even though the technical application of the career offender is correct. I think he says technical application is correct on the preceding page. But the court goes on to say, but I think the appropriate way to deal with that is through a variance. If I were to deal with it through a departure, I would be limited to a departure of only one criminal history category pursuant to 4A1.3 subsection B3A. And I think what the district court did was he looked at the departure. He said the departure is not enough to ameliorate the effect of the career offender guideline in this case, and then proceeded to step 3, which would be the variance. And to the extent there's a procedural error committed here, we think it's maybe because the court maybe went from step 2 to step 3, maybe possibly conflated those steps. But we think at the end result, looking at it from a harmless error standpoint, from a substantive reasonableness standpoint, the defendant actually benefited from that. Well, I don't have the transcript in front of me, but I read it. A little further on in the transcript, didn't the defense counsel actually say, agree with the judge that that's the way to go? Absolutely, Judge Malloy. I believe the record fairly reflects that even though the defendant made a pitch for a departure, as he's required to do to effectively represent Mr. Marcosia, I think defense counsel wisely saw that a variance was really the most advantageous vehicle for getting their client the best sentence possible, given the fact that he has a continuous stretch of meth-related convictions. I'm glad that Golan Booker has made sentencing so much easier. If I could focus you again, I do have the sentencing transcript here. Counsel may have gone along with the variance, but at pages 25 and 26 of the sentencing transcript, the court is clearly turning to the 3553A factors and marching through them in order. First, considering the nature and circumstances of the offense, and then proceeding on page 26 to discuss the need to avoid unwarranted disparities in sentencing. And that's where the court makes the statement, if Mr. Marcosia had not been designated a career offender, he would have had a criminal history category of 5 as opposed to 6, with an offense level of 29 and a range of imprisonment between 140 and 175 months. If that's what the district court thought he was comparing, in terms of the alternative sentences, if he hadn't been a career offender, why isn't that a glaring procedural error? Because it actually was an offense level 12, and if the court were accurately stating that, wouldn't it have been he would have otherwise faced a range of imprisonment of 27 to 33 months, instead of 140 to 175 months. I agree that when sentencing proceeds sometimes in not a linear fashion, I think that's fair to say, but looking at the organic development of the sentencing colloquy in this case, and if we go back it would be page 22 of the sentencing transcript and 102 of volume 2 of the appendix. Mr. Agdalino asked the court for the opportunity to be heard again after the government allocated, and did note for the record that this being a non-career criminal case, we would be down to around an offense level 12. So yes, the career criminal issue is what makes this, moving on to the next page, either 151 months or somewhere around the area that I had suggested in my brief, and the district court said understood. The district court clearly understood what the actual 2D1.1 calculation would have been had the defendant not been a career offender, and the district court was also aware that a departure was available under the provision I referred to in the career offender guideline, but decided that that one criminal history category departure was going to be insufficient, and effectively didn't deny the departure, didn't effectively rule on the departure, but constructively denied it in favor of a variance, and then decided balancing different factors including the potential disparity nationwide. That's where the district court looked at the sentencing commission's percentages and came up with something on the order of about 35% nationwide being the average for departures. The district court also considered at that point the age of the defendant, the last time the defendant had been convicted, his record of good behavior for an extended period of time, his family background, his age, which given the length of the sentence would have been significant for the district court to consider. So we believe the district court operated in a procedurally correct manner, if not a lineal manner in disposing of the departure issue, but the court knew of all the guideline options available, knew the departure that was available, knew the variance factors to consider, and considered all of them, and we believe arrived at a sentence that no jurist of reason would quibble with. Okay. Thank you, Mr. Rockestone. Thank you. Mr. Rock? My friend, Mr. Rock Tashel, did touch on the alleged intervening arrest that was brought up by Your Honor, and we were asked to talk about November 23, 2004, as the date of that intervening arrest, and you can see from the PSR that that's impossible for the simple reason that he's being sentenced to 8 to 23 months. There's no parole in Pennsylvania. You've got to do it every day of the 8th at least, and then you're eligible for parole. The homeless defendant, the probation officer observed him with meth manufacturing ingredients at the home in September of 2004. That has to be an error, Judge, because on 4-8-2-0-4, you'd count 8 months from there, you go to 12-8-2-0-4, 2004, and you're talking about an arrest that allegedly happened on 11-23-04. How could that be if he's in the lockup, if he's in Bradford County Prison? That's what I'm trying to say. Exactly, but the PSR reflects that he was observed, he had been paroled, and he was observed with drug manufacturing equipment after he was released on that first arrest. Well, if that's the case, Judge, then I would concede this entire appeal, if that was the case, that that happened. It did not happen. Well, but the PSR says he was sentenced to 8-23 months, he was paroled on August 31st of 2004, and it was revoked on December 8th of 2004 after the November 23 arrest. So you're saying the PSR is wrong? Yes. What happened in August then? He was paroled. The PSR says he was paroled. You can't be paroled in less than 8 months from 4-8-0-2-0-4. But this is what the district judge was relying upon was the unobjective pre-sentence report that says he was paroled, and he then was arrested in November for meth equipment, and then his parole was revoked. I mean, that's what the PSR says. All I did was ask for a remand for a hearing on that, Judge. That's the only thing I can answer you with. We are absolutely assured by our client that he never got released from the time he first went into Bradford County Prison until he was finished with the extra four years of federal time. Well, I don't know that a remand is an appropriate request based on that confusion, which in fact the text of the guidelines permits the court to consider your client a career offender notwithstanding. But it has to be a reasonable sentence, Judge. We understand. You think it should be less than what it was. Not just less than what it was, but it should have reflected that there is no recidivist aspect to this. I understand that, but you also, I think, conceded that the text of the guidelines doesn't help your argument. No, it doesn't. No, the text is a catch-22 for it. But it's a mindless one. We understand the case, and we understand your argument. Thank you. And we will take this matter under advisement, we think.